1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 01, 2024

SEAN F. McAVOY, CLERK

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

LORENZO R.,[1]

Plaintiff,

8

9

v.

10

MARTIN O'MALLEY, Commissioner of
Social Security,

11

Defendant.

12

13

14

No.    1: 24-cv-03007-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR FURTHER
PROCEEDINGS**

15

Due to severe bilateral hand impairments, status post-surgery; arthritis and

16

bone spurs in his hands and feet; back impairments; diabetes; bilateral knee

17

impairments, status post-left knee surgery; left shoulder impairments; chronic

18

fatigue and chronic pain; blurry vision; hearing impairments, dizziness;

19

thrombocytopenia; psoriasis; and psoriatic arthritis, Plaintiff Lorenzo R. claims

20

21

22

23

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as
"Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

that he is unable to work fulltime and applied for disability insurance benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ erred at step two in failing to find psoriatic arthritis a severe condition; improperly analyzed the opinions of the examining medical sources, Dr. Dill, PA-C Pine, and ARNP Washington as well as state agency consultants, Dr. Cowan and Dr. Cylus; and improperly assessed Plaintiff's credibility. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In June 2021, Plaintiff filed an application for benefits under Title 2, claiming disability beginning October 1, 2020, based on the physical and mental impairments noted above.[2]  After the agency denied Plaintiff benefits, ALJ Cecelia LaCara held a telephone hearing in March 2023, at which Plaintiff appeared with his representative.[3]  Plaintiff and a vocational expert testified.[4]

---

[2] AR 251, 287.

[3] AR 65-100.

[4] *Id*.

After the hearing, the ALJ issued a decision denying benefits.[5] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[6] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Lewis Cylus, MD, and Ian Cowan, MD, to be persuasive.

- The opinions of consultative examiner Marquetta Washington, ARNP, to be unpersuasive.

- The 2020 opinions of treating source Mary Pine, PA-C, to be not persuasive.

- The opinions of treating source Sarah L. Dill, MD, to be unpersuasive.[7]

The ALJ also found the third-party function report completed by Plaintiff's spouse to be not supported by the medical evidence of record.[8] As to the sequential disability analysis, the ALJ found:

- Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2026.

---

[5] AR 15-38.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 25-26.

[7] AR 26-30.

[8] AR 30.

1

2

- Step one: Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 1, 2020.

3

4

5

6

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar spine disorder, osteoarthritis of the left knee; obesity; thrombocytopenia of unclear onset; type II diabetes mellitus; and psoriasis.

7

8

9

10

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and specified that she considered Listing 1.15, 1.16, 1.18, 7.08, 11.4, and 8.05.

11

12

- RFC: Plaintiff had the RFC to perform medium work with the following exceptions:

13

14

15

can frequently climb ramps or stairs; can occasionally climb ladders, ropes or scaffolds; can frequently balance and stoop; can occasionally kneel, crouch, and crawl; can frequently reach overhead with the left upper extremity; and must avoid concentrated exposure to hazards.

16

17

- Step four: Plaintiff is able to perform his past relevant work as a winery worker and an industrial truck operator.

18

19

20

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a cleaner II

21

22

23

1
2

(DOT 919.687-014), hand packager (DOT 920.587-018), and cleaner, lab (DOT 381.687-022).[9]

3
4

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[10]

5

## II.    Standard of Review

6
7
8
9
10

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[11] and such error impacted the nondisability determination.[12] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]

11

_____

12

[9] AR 20-32.

13

[10] AR 248.

14

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

15
16
17
18

[12] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

19
20
21
22
23

[13] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not

### III.    Analysis

Plaintiff seeks relief from the denial of disability on three grounds. He argues the ALJ erred when evaluating the medical opinions; erred at Step Two by in failing to find that Plaintiff's psoriatic arthritis was a severe impairment, and erred when evaluating Plaintiff's subjective complaints.  As is explained below, the Court concludes that the ALJ erred in her evaluation of the medical opinion evidence and failed to adequately articulate her reasoning that Plaintiff's psoriatic arthritis was not a severe impairment and that the ALJ's analysis as to each contains consequential error.

**A.    Step Two (Severe Impairment): Plaintiff establishes consequential error.**

Plaintiff argues that the ALJ erred at step two by failing to find his psoriatic arthritis to be a severe impairment.  The Commissioner argues that the ALJ properly considered the condition and found it not severe and also that the ALJ accounted for the effects of psoriatic arthritis later in the sequential evaluation. The Court disagrees with the Commissioner and finds that the ALJ committed consequential error.

---

simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.    <u>Standard</u>

At step two of the sequential process, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[14] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment and 2), if so, determining whether the impairment is severe.[15]

Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[16] Rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."[17] Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[18] If the objective medical signs and laboratory findings

---

[14] 20 C.F.R. § 416.920(c).

[15] *Id.* § 416.920(a)(4)(ii).

[16] *Id.* § 416.921.

[17] *Id.*

[18] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. § 416.913(a)(1).

demonstrate the claimant has a medically determinable impairment,[19] the ALJ must then determine whether that impairment is severe.[20]

The severity determination is discussed in terms of what is *not* severe.[21] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[22] Because step two is simply to screen out weak claims,[23] "[g]reat care should be exercised in applying the not severe impairment concept."[24]

2.  The ALJ's Findings

When considering impairments at step two, the ALJ did not address psoriatic arthritis, although she did consider psoriasis and found it to be a severe condition.[25] At step three she did not consider the appropriate listing for psoriatic

---

[19]  "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. § 416.902(l).

[20]  *See* Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

[21]  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[22]  *Id.*; *see* SSR 85-28 at *3.

[23]  *Smolen*, 80 F.3d at 1290.

[24]  SSR 85-28 at *4.

[25]  AR 21-22.

arthritis or any autoimmune disorder.[26]  The ALJ addressed Plaintiff's psoriatic arthritis when she considered the persuasiveness of a narrative letter drafted by in the context of Dr. Dill's narrative letter, which stated that Plaintiff suffered from psoriatic arthritis, a condition which results in pain and swelling in multiple joints and can lead to impairments that limit the ability to perform manual labor.[27]

The ALJ considered Dr. Dill's letter and articulated the following reasoning:

> The undersigned finds Dr. Dill's opinion unpersuasive.  Notably, her opinion is conclusory and concerns an issue reserved to the Commissioner.  Moreover, her statement is brief and vague, as she focuses primarily on psoriatic arthritis in general, rather than in regard to its actual and specific effects on the claimant.  Furthermore, while she stated the claimant cannot work, she did not provide any support for this conclusion or elaborate on how the claimant's condition specifically limits his ability to perform work-related tasks and activities.  She also acknowledged the claimant was not receiving any treatment for this condition and was likely to improve if he does pursue treatment.  Based on these factors, the undersigned does not find her opinion sufficiently supported to warrant the establishment of any limitations beyond those set forth herein.[28]

She went on to state further:

> The undersigned also notes that Dr. Dill's treating notes do not support her opinion that the claimant cannot work.  She first saw the claimant on March 9, 2023 and noted he was well- appearing and in no apparent distress.  She did note some psoriatic skin lesions over his scalp, in and around his ears, and around his elbows, but described these lesions as fairly mild.  She also noted the claimant had nail pitting in his fingernails as well as ridging, onycholysis, and debris of his great toenails, but did not indicate these findings would affect the

---

[26] AR 22-24.

[27] AR 29.

[28] AR 29-30.

claimant's functioning. She also noted the claimant had decreased range of motion of his hips and his shoulders, left greater than right, and noted tenderness of his wrists, right hip, and knees. She also reported the claimant had pain with trans metatarsal squeeze on the right and plantar fascia bilaterally, but no significant tenderness over the SI joints (and no abnormalities noted on x-ray). Dr. Dill diagnosed mild to moderate psoriasis and psoriatic arthritis and started the claimant on Humira (Exhibit 15-F, pp. 1-6, 15).[29]

3.    Relevant Medical Records

On January 29, 2022, Plaintiff was examined by ARNP Marquetta Washington at the request of the Commissioner.[30] He presented with chief complaints of severe bilateral hand impairment, status post bilateral surgeries; arthritis and bone spurs in his hands and feet; back impairments; diabetes; bilateral knee impairments, status post left knee surgery; left shoulder impairments; chronic pain and fatigue; blurred vision; and dizziness.[31] ARNP Washington reviewed notes from PA Pine from the period of November 2020 to July 2021.[32] She noted that this present medications were Lisinopril, Lantus, Glimiperide, Citalopral, Meloxicam, Metformin and Oxycodone.[33]

_____

[29] AR 30.

[30] AR 409-418.

[31] AR 409.

[32] *Id*.

[33] AR 410-411.

Plaintiff reported the following as to his activities of daily living: he can care for his personal hygiene and bathe; he can climb a full flight of stairs but has to stop due to sciatic pain and knee pain; he can do laundry but his brother does dishwashing, sweeping, and vacuuming; he can warm food in the microwave; he shops weekly; he can drive; and he can manage his finances.[34]   On examination, he was in no distress, had a steady gait, was able to rise from a chair and get on and off the table unassisted, he was able to take off his shoes and socks, could make a fist, could touch his finger to his thumb, could pick up a coin, and could use buttons.[35] On the right, his second, third, and fourth toes were raised off the floor and his second and third toes were mallet toes.[36] Plaintiff's left shoulder abduction and flexion were limited to 120 degrees.[37] Plaintiff could walk on heels but not on toes due to arthritis, he could not hop due to knee pain, and he could squat halfway due to knee pain.[38] Plaintiff had a right index finger DIP joint deformity.[39] Straight leg raising was negative and sensation was intact, but there was pain on palpation in the right lower back, the left anterior and lateral shoulder, and the left

---

[34] AR 411.

[35] AR 412-413.

[36] AR 413.

[37] AR 414.

[38] *Id.*

[39] *Id.*

scapula.[40] She diagnosed Plaintiff with decreased right shoulder flexion and

abduction[41];  abdominal obesity; diabetes; hyperextended second, third, and fourth

toe; chronic pain; low back pain; left shoulder pain; hypertension; arthritis of the

right index finger; and right second and third mallet toes.[42]

ARNP Washington opined that Plaintiff could lift and carry 25 pounds

occasionally and 10 pounds frequently due to back pain; could stand and walk for a

total of 6 hours but would need to alternate between standing, walking, or sitting

every 30 minutes due to back pain; has no limitation to climbing, stopping,

bending, or balancing; is limited to occasional crawling, kneeling, and crouching

due to back pain and obesity; has no limitation handling, fingering, gripping, and

feeling; had no limitation reaching on the right and a limitation to occasional

overhead reaching on the left due to decreased range of motion; had no limitation

to vision, hearing, or speech; had no limitation to working around heavy

machinery, extremes of temperature, respiratory irritants, noise, and vibration; is

limited to never work at heights due to back pain; and has no limitation to

traveling in a car or using public transportation.[43]

_____

[40] *Id.*

[41] It appears that this is a typographical error, as the abnormal findings on
examination relate to the left shoulder.

[42] AR 415.

[43] AR 416-417.

On November 28, 2022, PA Pine discussed abnormal lab results from blood tests taken on August 24, 2022.[44]  Plaintiff's platelet count was low and he reported easy bruising, his sed rate was high, his ANA was positive, his liver enzymes were elevated, his A1C was elevated at 8.5, his triglycerides were elevated, and his rheumatoid factor was negative.[45] PA Pine assessed Covid-19 infection, type 2 diabetes, thrombocytopenia, and abnormal blood findings.[46] PA Pine referred Plaintiff to a hematologist due to his low platelet count and to a rheumatologist due to his positive ANA and elevated sed rate.[47]

On December 21, 2022, Plaintiff presented to PA Pine and asked her to complete a functional assessment for DSHS.[48] On the same day, PA Pine completed a Physical Functional Evaluation form.[49] She states that Plaintiff's chief complaints and symptoms were uncontrolled diabetes; joint pain of the back, ankles, knees, shoulders, and wrists; sciatica; and low platelets.[50]

---

[44] AR 465.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] AR 467.

[49] AR 469-471.

[50] AR 469.

1   On January 12, 2023, Plaintiff presented to a hematologist, Mahakit Inklab,

2   MD, at the SUN Hospital Outpatient Clinic.[51] Plaintiff complained of pain in all his

3   joints, especially the left shoulder wrists, small joints of the hands, hips, and

4   knees.[52] He had been diagnosed with psoriatic arthritis but not treated for it.[53]

5   Dr .Inklab diagnosed thrombocytopenia of unclear onset and drew blood for a

6   comprehensive lab panel.[54] Secondary diagnoses were psoriatic arthritis, morbid

7   obesity, and chronic joint pain.

8       On January 20, 2023, Plaintiff presented to the SUN Hospital Outpatient

9   Clinic for his first injection of Injectafer.[55] It was noted that he suffered chronic

10  arthritic pain throughout his body and moderate fatigue, and that he tolerated the

11  injection.[56] On January 27, 2023, Plaintiff presented to the SUN Hospital

12  Outpatient Clinic for his second injection of Injectafer.[57] It was noted that he had a

13

14

15

_____

16  [51] AR 477.

17  [52] *Id.*

18  [53] *Id.*

19  [54] AR 478.

20  [55] AR 476.

21  [56] *Id.*

22  [57] AR 475.

23

headache and fatigue the day of his first injection but had tolerated the medication.[58] On January 31, 2023, Plaintiff's A1C remained elevated at 9.7.[59]

On February 6, 2023, PA Pine completed a Medical Questionnaire.[60] She again indicated on a check-box form that she agreed Plaintiff would require more than three breaks in an eight-hour day if he was working fulltime.[61] She opined that Plaintiff could stand and walk for a combined total of up to two and a half hours in an eight-hour work day.[62] She opined that in an eight-hour day Plaintiff would be able to lift and carry no more than ten pounds on a regular and continuous basis.[63] His impairments began in 2018 and she had referred him to a rheumatologist and a hematologist.[64] PA Pine stated that Plaintiff had been unable to work for two years due to joint pain and back pain.[65] She stated that the following objective test results supported his claim: a low platelet count of 67 on August 24, 2022; a high A1C count of 8.5 on August 24, 2022; and a positive ANA

---

[58] *Id.*

[59] AR 453.

[60] AR 431.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] AR 470.

serum test on August 24, 2022.[66] She stated that Plaintiff's neck strain and right-sided sciatica imposed a severe restriction on his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch.[67] PA Pine opined that Plaintiff is unable to meet the demands of sedentary work, and stated that Plaintiff does not have and does not need to be treated for any substance abuse disorder.[68] PA Pine opined that the best treatment for Plaintiff's condition was a referral to a hematologist and rheumatologist.[69]

On March 9, 2023, Plaintiff presented to rheumatologist Sarah Dill, MD, on the referral of Dr. Inklab.[70]  She noted that Plaintiff suffered from thrombocytopenia and psoriasis and that Plaintiff's thrombocytopenia was of unclear etiology and possibly was related to use of NSAIDS, liver disease, or an immune disorder.[71] Plaintiff reported pain and stiffness in his left arm, right shoulder, back, elbows, knees, and joints in his wrists and hands.[72] It was noted

---

[66] *Id.*

[67] *Id.*

[68] AR 471.

[69] *Id.*

[70] AR 485.

[71] *Id.*

[72] *Id.*

that pain is significant in the right elbow, feet, left knee, and hands and that he had difficulty with his grip and morning stiffness.[73]

Dr. Dill conducted a detailed musculoskeletal examination and found the following: decreased range of motion in the shoulders, with bilateral anterior and lateral joint tenderness; bilateral medial epicondyle tender and right lateral tender; right wrist tender and swollen; right MCP 1 tender and MCP 4 and 5 tender and swollen; right PIP 4 and 5 tender and slightly swollen; left wrist tender and swollen; left MCP 3 tender and PIP 3 and 5 tender and slightly swollen; right greater trochanteric bursa tender, with decreased range of motion bilaterally in the hips with internal and external rotation; knees bilaterally tender left greater than right; pain with metatarsal squeeze on the right; plantar fascia tenderness bilaterally; and no significant tenderness over the SI joint.[74]

Dr. Dill assessed Plaintiff with psoriatic arthritis, psoriasis, thrombocytopenia, abnormal liver function tests, usage of high risk (prescription) medication, vitamin D deficiency, arthritis in the hands, arthritis in the foot, and bilateral low back pain with right-sided sciatica.[75]  Dr. Dill noted that Plaintiff had multiple tender swollen joints and psoriasis but that due to abnormal liver function and thrombocytopenia, she would not advise the use of standard medications for

---

[73] *Id.*

[74] AR 486.

[75] AR 487.

psoriatic arthritis and would instead prescribe Humira, an immune suppressor.[76]
Dr. Dill ordered a comprehensive panel of laboratory tests, including
sedimentation rate and x-rays of the hands, feet, and low back.[77] Laboratory tests
taken indicated low platelet count, a high RDW, high glucose, low creatinine, low
albumin, low A/G ratio, high alkaline phosphatase, high ALT, and an elevated
sedimentation rate.[78]  An x-ray of the sacroiliac joints was unremarkable.[79] An x-
ray of the foot indicated small bunions involving the first metatarsals; mild
degenerative disease involving the bilateral great toes; moderate plantar and
Achilles spurs suggesting calcific tendonitis of the Achilles tendon, and a small
amount of soft tissue calcification in the plantar fascia of the right foot.[80] An X-ray
of the lumbar spine indicated moderate degenerative disc disease with grade 1
spondylolisthesis at the L5-S1.[81]

On March 9, 2023, Dr. Dill wrote a narrative letter which stated that
Plaintiff was under her care for psoriatic arthritis, which often interferes in the

---

[76] *Id.*

[77] AR 488.

[78] AR 493-498.

[79] AR 499.

[80] AR 500.

[81] AR 502.

ability to work in manual labor jobs.[82] She stated that Plaintiff was unable to work due to his condition but that he may improve once he receives treatment.[83]

On March 14, 2023, Plaintiff's insurance approved his prescription for Humira and Dr. Dill's office telephoned Plaintiff and advised him to start the medication.[84]

4.    Analysis

The ALJ articulated several reasons for finding that Dr. Dill's statement that Plaintiff could not work was unpersuasive.  The ALJ reasoned that Dr. Dill did not state specifically how Plaintiff's condition would limit him; that Dr. Dill's examination notes indicated decreased range of motion of the hips, shoulders, wrists, and knees but no tenderness of the SI joint; that Plaintiff was not receiving treatment for his condition; and that Plaintiff's condition could reasonably limit his ability to work but not be completely unable to work.

First, the Court notes that when read in its proper context, the narrative letter from Dr. Dill indicates that Plaintiff's condition would limit him from performing manual labor, such as medium or heavy exertional work.  Dr. Dill wrote:

> Mr. Lorenzo Robledo (DOB 01/30/1966) is a patient under my care for the diagnosis of Psoriatic Arthritis. This is an autoimmune condition

---

[82] AR 484.

[83] *Id.*

[84] AR 504-505.

1
2
3

which results in pain and swelling in multiple joints in the body. It often leads to functional impairment and interferes with the ability to work, particularly in manual labor jobs. He is currently unable to work due to pain related to his condition. Mr. Robledo is not yet on treatment; we may see improvement once he has started treatment.[85]

4
5
6
7

While the ALJ is correct that the statement made Dr. Dill as to functional limitations is unclear and somewhat vague, it is clear from Dr. Dill's letter that she is finding that Plaintiff's condition limits his function to the extent that it constitutes a severe impairment for purposes of consideration at step two.

8
9
10
11
12
13
14
15
16
17

The ALJ's reasoning that the examination results do not show functional limitation is erroneous. It is notable that Dr. Dill found on examination that Plaintiff's psoriatic arthritis was most symptomatic in hands and also symptomatic in his shoulder and elbow. Dr. Dill found decreased range of motion in the shoulders, with bilateral anterior and lateral joint tenderness; bilateral medial epicondyle tender and right lateral tender; right wrist tender and swollen; right MCP 1 tender and MCP 4 and 5 tender and swollen; right PIP 4 and 5 tender and slightly swollen; left wrist tender and swollen; and the left MCP 3 tender and PIP 3 and 5 tender and slightly swollen.[86]

18
19

While the ALJ addressed Dr. Dill's finding as to Plaintiff's shoulders, wrists, knees; hip and SI joint, she made no mention of the multiple findings of tenderness

20

21
22
23

[85] AR 484.

[86] AR 486.

and swelling in Plaintiff's hands and elbow.[87]  She also noted that there was

tenderness in Plaintiff's wrists but failed to note the swelling associated with it.[88]

Dr. Dill's examination is consistent with the observations of ARNP Washington,

who noted obvious deformity in Plaintiff's index finger due to arthritis.[89]

The ALJ's formulated RFC does not contain any provision limiting Plaintiff's

use of his hands.  Because the ALJ did not address Dr. Dill's findings as to the

swelling and tenderness throughout Plaintiff's hands and failed to make any

provision in the RFC for handling, fingering, or feeling, it is unclear to the Court

whether the ALJ properly considered the evidence regarding the deformity,

swelling, and tenderness throughout Plaintiff's hands.

The ALJ additionally erred in stating that Plaintiff was not being treated for

psoriatic arthritis.  This is not supported by Dr. Dill's examination records.

Dr. Dill stated that because of thrombocytopenia and liver disease Plaintiff was not

a candidate for standard treatment and instead would need to be placed on

Humira, if his lab results did not show any other complication which would present

him from taking it.[90] The ALJ does not offer any reasoning as to any other

alternative therapy or treatment offered by any other source. Thus, the ALJ is

---

[87] AR 30.

[88] *Id.*

[89] AR 414.

[90] AR 487.

1  erroneously finding that there is a treatment available to Plaintiff other than the

2  medication prescribed by his rheumatologist.

3        Although step-two errors are often harmless,[91] and the Commissioner argues

4  that any error here was harmless because the ALJ considered Plaintiff's psoriatic

5  arthritis later in the sequential evaluation, the record does not support that

6  conclusion.  Here, the ALJ's step-two error was not harmless.  The ALJ did not

7  consider any of these impairments during the later sequential steps—or at least

8  did not include such findings, record citations, or analysis to allow this Court to

9  determine whether the ALJ considered these impairments and any resulting

10 limitations.[92]

11       The Court cannot be certain that the step-two error was not prejudicial at

12 the later steps.  The Court concludes that the case should be remanded and the

13 ALJ should be directed to consider all evidence of Plaintiff's treatment for psoriatic

14 arthritis.

15

16  _____

17 [91] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006);

18 *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

19 [92] *See Burch*  400 F.3d at 2  682 ("Assuming without deciding that this omission

20 constituted legal error [at step two], it could only have prejudiced Burch in step

21 three (listing impairment determination) or step five (RFC) because the other

22 steps, including this one, were resolved in her favor.").

23

1

**B.      Medical Opinion: Plaintiff establishes consequential error**

2            Plaintiff argues the ALJ erred in her evaluation of the medical opinions.[93]

3     Specifically, Plaintiff argues that the ALJ erred in finding the opinions of state

4     agency consultants Dr. Cylus and Dr. Cowan to be persuasive and in finding the

5     opinions of the examining sources, ARNP Washington, PA Pine and Dr. Dill to be

6     unpersuasive. Because the Court has remanded the case due to error at step two, it

7     will only briefly address this issue.

8            1.    Standard

9            The ALJ was required to consider and evaluate the persuasiveness of the

10    medical opinions and prior administrative medical findings.[94] The factors for

11    evaluating the persuasiveness of medical opinions and prior administrative

12    medical findings include, but are not limited to, supportability, consistency,

13    relationship with the claimant, and specialization.[95] Supportability and consistency

14    are the most important factors,[96] and the ALJ must explain how she considered the

15    _____

16    [93] An ALJ must consider and articulate how persuasive she found each medical

17    opinion, including whether the medical opinion was consistent with and supported

18    by the record. 20 C.F.R. §§ 404,1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792

19    (9th Cir. 2022).

20    [94] 20 C.F.R. § 404.1520c(a), (b).

21    [95] 20 C.F.R. § 404.1520c(c)(1)–(5).

22    [96] *Id.* § 404.1520c(b)(2).

23

1    supportability and consistency factors when reviewing the medical opinions and

2    support her explanation with substantial evidence.[97] When considering the ALJ's

3    findings, the Court is constrained to the reasons and supporting explanation

4    offered by the ALJ.[98]

5         The opinions of non-treating or non-examining physicians may also serve as

6    substantial evidence when the opinions are consistent with independent clinical

7    findings or other evidence in the record.[99] However, the Ninth Circuit has held that

8    it is error for an ALJ to rely on stale medical opinions that do not reflect

9    subsequent deterioration of a Plaintiff's condition.[100]

10

_____

11

12   [97] *Id.* § 404.1520c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must

     articulate . . . how persuasive it finds all of the medical opinions from each doctor

13   or other source and explain how it considered the supportability and consistency

14   factors in reaching these findings.") (cleaned up).

15   [98] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court

16   review is constrained to the reasons the ALJ gave).

17   [99] *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

18   [100] *See, Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (finding an ALJ erred in

19   relying on opinions that did not account for a later evaluation showing the

20   claimant's foot condition was progressively deteriorating); *Leslie v. Astrue*, 318 Fed.

21   App'x. 591, 592 (9th Cir. 2009) (holding that an ALJ erred in relying on opinions

22   that did not account for a more recent suicide attempt)).

23

DISPOSITIVE ORDER - 24

2.    Plaintiff's Testimony

On March 10, 2023, Plaintiff appeared with her attorney for a hearing via video conference call before ALJ Cecelia LaCara.[101]  Plaintiff testified, and a vocational expert (VE) testified.[102] Plaintiff testified that he last worked two years prior and had quit because he could not keep up anymore.[103] He said that for the last fifteen years he had held two jobs: either a forklift driver or a cellar master in a winery.[104] Plaintiff said he could not do the jobs anymore because he has psoriatic arthritis in his low back, wrists, elbows, knees, ankles, and toes and that they are always in pain.[105] He said that he also has sciatica and that the bumping of the forklift aggravates it, and that when working as a cellar master he has to climb ladders and scaffolds and carry heavy items.[106]

Plaintiff said that he lived with his mother and his disabled brother and that his father passed away in 2021 and that was when his mother moved in with

---

[101] AR 65-100.

[102] *Id.*

[103] AR 70.

[104] AR 71.

[105] *Id.*

[106] AR 71-72.

him.[107] He has a nephew who will come to visit but who does not stay.[108] He said that his mother and brother pay the living expenses because he has no income other than food stamps.[109] Since he stopped working in 2020, Plaintiff has managed to pay his bills by selling his belongings, such as three motorcycles and his car.[110] Because he sold his own car, he has to borrow his mother's car at times.[111] Plaintiff said that Mary Pine has been his primary medical provider for the last five years and that she had referred him to a specialist.[112] Mary Pine referred Plaintiff to a hematologist, Dr. Eglad, and he referred Plaintiff to rheumatologist Dr. Dill.[113] Dr. Eglad gave Plaintiff iron infusions because he was anemic.[114] Dr. Eglad had Plaintiff's rheumatologist appointment expedited to have him seen earlier.[115] Plaintiff said that he was no longer taking meloxicam and that

---

[107] AR 72.

[108] *Id.*

[109] AR 72-73.

[110] AR 73-74.

[111] AR 74.

[112] *Id.*

[113] AR 75.

[114] AR 76.

[115] *Id.*

Dr. Dill was running lab tests to see if he would be able to take an immunosuppressant medication.[116]

Plaintiff testified that as a wine cellar master he had to climb ladders and scaffolds daily and needed to carry bags of chemicals.[117] He was required to climb 35 feet to the top of the tanks to inspect and put chemicals in.[118] He said that as a cellar master he was an assistant wine maker and had to inspect tanks, drive a forklift, weigh chemicals, and take the chemicals upstairs or ladders to add it to the wine tanks.[119] His work required three 50 pound bags to be brought up the 35 foot ladders and it required three people so he also had to supervise others.[120] He said that he spent 45 minutes a day doing administrative work and that he was not able to hire anyone but sometimes could dismiss them, and that he would do annual and periodic review and time sheets but he probably spent one half a hour per week doing that type of work.[121] He would inspect what came in and could make a request that things be ordered but was not able to order things.[122] He said that he

---

[116] AR 77.

[117] *Id.*

[118] AR 78.

[119] AR 78-79.

[120] AR 79.

[121] AR 79-80.

[122] AR 80.

had a crew of five and that he spent a half hour giving instructions and assigning jobs and then for the rest of the day he worked along with them on the floor doing the assigned tasks.[123] He said he had worked in wineries for 34 years and that it was a year-round job.[124] He said that the winery he worked at made 3.5 million gallons of wine for Chateau St. Michelle so it was a constant cycle of harvesting and fermenting.[125] One of the wineries he worked with laid off workers but he went to work with another winery but still had seniority because he had more experience than other workers.[126]  Plaintiff said that he had a GED and but did not take any other college or vocational training, although that he had taken small two-day seminars on filtration and other wine issues.[127]

Plaintiff said that he had been diagnosed with psoriatic arthritis many years prior and that he never followed up for treatment because he thought the treatments they had then had too many side effects.[128] They did not treat his psoriatic arthritis when it was diagnosed.[129] He said that the day before the

---

[123] AR 80-81.

[124] AR 81.

[125] AR 81-82.

[126] AR 82.

[127] AR 83.

[128] *Id*.

[129] AR 84.

1    hearing he had x-rays taken of his feet, hands, back, and hips.[130] He had his knees

2    x-rayed a year prior to that but it had been years since he had other body parts x-

3    rayed.[131]

4         Plaintiff said that his brother is disabled due to schizophrenia but is

5    physically healthy and able to care for himself.[132] Her said that he cares for his

6    mother because she has bad arthritis and he needs to get her mail and groceries.[133]

7    He said that the three of them chip in to perform the household chores.[134] He said

8    that he did not have any belongings to sell and was at risk of his electricity being

9    turned off.[135] He said that the medication helps his pain but does not take it away

10   and that even with the medicine it takes him 30 minutes to get out of bed.[136] He

11   said that his weight is 260 and that he tries to walk or to ride a bicycle to lose

12   weight but that he cannot be on the bike for more than a half hour due to pain.[137]

13

14

15   [130] *Id.*

16   [131] *Id.*

17   [132] AR 87.

18   [133] *Id.*

19   [134] *Id.*

20   [135] AR 88.

21   [136] *Id.*

22   [137] AR 89.

23

DISPOSITIVE ORDER - 29

He said that every day he has to lay down for an hour and a half.[138] He said that on average he will spend an hour a day doing chores and then an hour and a half laying down to recover.[139] He will sit for an hour and a half and tries to read.[140]

 The VE testified that he did not need any additional information to identify Plaintiff's past relevant work.[141] He stated that Plaintiff's past work was an industrial truck operator (DOT 921.683-050), which is medium level work with an SVP of 3; and winery worker (DOT 621.685-370), which is medium level work with an SVP of 3.[142]

 The ALJ gave a hypothetical of an individual with Plaintiff's age, education, and work experience limited to medium work with frequent climbing of ramps or stairs; occasional climbing of ladders, ropes, or scaffolds; frequent balancing and stooping; occasional kneeling, crouching, and crawling; frequent overhead reaching with the left arm; and must avoid concentrated exposure to hazards.[143]  The VE testified that an individual with those limitations would be able to perform both

---

[138] *Id.*

[139] AR 90.

[140] AR 90-91.

[141] AR 93-94.

[142] AR 94.

[143] *Id.*

the job of winery worker and industrial truck operator.[144] He noted that the DOT does not distinguish between overhead reaching and other reaching.[145]  The VE testified that in addition to Plaintiff's past relevant work, the individual would be able to perform work as a cleaner II (DOT 919.687-014), a hand packager (DOT 920.587-018), and a cleaner, laboratory equipment (DOT 381.687-022).[146]

The ALJ gave a second hypothetical of an individual limited to the light exertional level with the ability to stand or walk for a total of six hours that can be taken in thirty-minute periods before changing position; occasional crawling, kneeling, and crouching; occasional overhead reaching with the left arm; no climbing of ladders, ropes, or scaffolds; and no work at unprotected heights.[147] The VE testified that the individual could not perform Plaintiff's past relevant work.[148] The VE testified that there would be no transferable skills that would fit within the hypothetical.[149] The individual could perform work as an electronics worker (DOT 726.687-010), an inspector packer (DOT 784.687-042), and an assembler small

---

[144] AR 95.

[145] *Id.*

[146] AR 96.

[147] *Id.*

[148] *Id.*

[149] AR 97.

products (DOT 706.684-022).[150] The VE testified that his testimony had been according to the DOT with the exception of differences between climbing ladders or stairs, reaching overhead versus other directions, and consideration of a sit/stand option.[151]

The VE testified that the jobs cited would allow for a ten-to-fifteen-minute break in the morning and afternoon, and a thirty-to-sixty-minute break for lunch.[152] He stated that if an employee required extra breaks not allowed other employees it would be an accommodation and if they required extra minutes it would not be allowed to exceed thirty minutes additional time off task per day.[153]

3.    Relevant Medical Records

Plaintiff hereby incorporate by reference the relevant medical records recited by the Court in its prior analysis of the ALJ error at step two.

4.    Analysis

The Court addressed the ALJ's errors as to her consideration of the opinions of Dr. Dill it its prior analysis of step-two errors.  To the extent that the Court has remanded the case for consideration of Dr. Dill's opinions, the ALJ will be required to reconsider the medical opinions in general.  The Court suggests that the ALJ

---

[150] *Id.*

[151] *Id.*

[152] AR 98.

[153] AR 98-99.

consider that the opinions of Dr. Cylus and Dr. Cowan were rendered prior to the deterioration of Plaintiff's condition and his diagnosis with both thrombocytopenia and psoriatic arthritis. While the Court does not find that the opinions of Dr. Cylus and Dr. Cowan were stale due a passage of time, it is clear that at the time Drs. Clyus and Cowan rendered the opinions they were not able to review evidence of at least one severe impairment. The ALJ's reliance on those opinions is thus questionable.

     5.   <u>Summary</u>

Because the ALJ did not give good reasons for her evaluation of the medical opinions of Dr. Dill, a remand is warranted. Moreover, her sole reliance on opinions rendered prior a deterioration in Plaintiff's condition is in question. On remand, the ALJ is directed to properly consider the medical evidence and, if necessary, develop the record further by ordering a consultative examination or calling a medical expert to testify.

**C.   Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly assess his subjective complaints. As discussed above, the ALJ failed to consider the medical record as a whole when considering the medical opinions. Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints.

1

2

**D.     Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The

3     decision whether to remand a case for additional evidence, or simply to award

4     benefits, is within the discretion of the court."[154] When the court reverses an ALJ's

5     decision for error, the court "ordinarily must remand to the agency for further

6     proceedings."[155]

7          The Court finds that further development is necessary for a proper disability

8     determination. Here, it is not clear what, if any, additional limitations are to be

9     added to the RFC. Therefore, the ALJ should properly consider the opinion

10    evidence and make findings at each of the five steps of the sequential evaluation

11    process.

12                                **IV.     Conclusion**

13         Accordingly, **IT IS HEREBY ORDERED**:

14

15

16

17

-----------------------------------

[154] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*,

18    761 F.2d 530 (9th Cir. 1985)).

19    [155] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595

20    ("[T]he proper course, except in rare circumstances, is to remand to the agency for

21    additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

22    775 F.3d 1090, 1099 (9th Cir. 2014).

23

1.      The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 90**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 1st day of July, 2024.

_____

EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 35